AO 106 (Rev. 04/10)  Application for a Search Warrant (Modified: WAWD 10-26-18)

# UNITED STATES DISTRICT COURT

for the

Western District of Washington

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Video System stored at the premises controlled by<br>Ring, LLC, more fully described in Attachment A | )<br>)<br>)<br>)<br>)<br>)    Case No. MJ23-361 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
Video System stored at the premises controlled by Ring, LLC, more fully described in Attachment A, incorporated herein by reference.

located in the _____ Western _____ District of _____ Washington _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 113(a)(8) & 1153(a) | Assault by Strangulation |

The application is based on these facts:
- ✓ See Affidavit of FBI SA Natalie Leavitt, continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

*Applicant's signature*

Natalie Leavitt, FBI Special Agent
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date: _____ 07/18/2023 _____

*Judge's signature*

City and state: Seattle, Washington

S. Kate Vaughan, United States Magistrate Judge
*Printed name and title*

USAO: 2023R00502

## AFFIDAVIT OF NATALIE LEAVITT

STATE OF WASHINGTON          )

                             )          ss

COUNTY OF WHATCOM            )

I, NATALIE LEAVITT, a Special Agent with the Federal Bureau of Investigation, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated a Ring Video Doorbell system in use at 2767 Lummi Shore Road, Bellingham, Washington, 98226 (the "Subject Premises"), which is stored at premises owned, maintained, controlled, or operated by Ring, LLC, ("Ring") a home security products company owned by Amazon.com, Inc. and headquartered in Santa Monica, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A), to require Ring to disclose to the government records and other information in its possession, including video content, pertaining to the Ring system in use at the Subject Premises.

2.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been employed in that role since April 2022.  I have investigated matters involving but not limited to assaults, rape, sexual abuse, fraud, and Indian Country crimes.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement officers and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      This affidavit and warrant application are being presented electronically pursuant to Federal Rules of Criminal Procedure 4.1 and 41(d)(3).

1

**JURISDICTION**

2     5.     This Court has jurisdiction to issue the requested warrant because it is "a

3   court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a),

4   (b)(1)(A), & (c)(1)(A).  Specifically, the Court is, "a district court of the United States . . .

5   that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

6

**PROBABLE CAUSE**

7

**Offense Under Investigation**

8     6.     Based on my training and experience and the facts as set forth in this

9   affidavit, there is probable cause to believe that JOSEPH MICHAEL QUINCY

10   JEFFERSON ("JEFFERSON") has violated 18 U.S.C. §§ 113(a)(8) and 1153(a) (Assault

11   by Strangulation).  There is also probable cause to search the property described in

12   Attachment A for evidence of this crime further described in Attachment B.

13     7.     On or about April 8, 2023, at approximately 1:00 a.m., Lindsey Hoglund,

14   and a female friend and neighbor, Heidi Solomon, arrived at Lummi Nation Police

15   Department ("LNPD") and reported that JEFFERSON assaulted and strangled Hoglund.

16   Hoglund described JEFFERSON as her intimate partner and roommate of seven years.

17   During the recorded interview conducted by LNPD Officer Thomas Granger, Hoglund

18   provided the following information.   She and JEFFERSON got into an argument in the

19   dining room of their shared residence.  JEFFERSON punched Hoglund on the right side

20   of her face and jaw area with his left hand.  JEFFERSON then shoved her into a shelving

21   unit.  JEFFERSON demanded that Hoglund give him her cell phone, but she refused to

22   do so.  JEFFERSON tackled Hoglund and they both fell on the ground.  Hoglund landed

23   face down on the floor with JEFFERSON on top of her.  JEFFERSON strangled Hoglund

24   by putting his arm around her neck and squeezing.  Hoglund scratched and fought to get

25   JEFFERSON off her.  She feared she was going to die.  Hoglund was not able to breathe

26   and lost consciousness.  After Doe regained consciousness and JEFFERSON stopped

27   strangling her, she saw spots.  Doe ran out the door of the residence and made her way

28

toward Solomon's house.  JEFFERSON followed Hoglund in his vehicle before leaving the area.

8.      Officer Granger observed petechial hemorrhaging in the upper areas of both of Hoglund's eyes and on her upper cheek areas near her eyes.  Granger observed an elliptical-shaped red mark near Hoglund's left clavicle, which appeared to be from a finger, as well as a small scratch on her left shoulder.  He also noted red marks on the front and left side of Hoglund's neck and bruising on the front of her neck under her chin. Hoglund reported that both sides of her neck were sore, that it hurt to swallow, and that her voice was hoarse.

9.      A female friend of Hoglund, Shalynn Cordero, later drove Hoglund to PeaceHealth United General Medical Center in Sedro-Woolley for a forensic examination and medical treatment for her injuries.  Hoglund provided the following information to the forensic nurse.  JEFFERSON strangled her for about 60-90 seconds before she passed out.  When she regained consciousness JEFFERSON's arms were still around her neck. JEFFERSON tightened his grip and strangled Hoglund for another 60-90 seconds, causing her to pass out a second time.  When Hoglund regained consciousness, she ran out of the house toward a neighbor's residence.  The nurse noted the presence of petechia on both of Hoglund's eyes and behind her left ear, swelling and ligature marks on her neck, painfulness on the outside of her neck upon palpitation, and the presence of abrasions on her knees and left shoulder.

10.      The LNPD subsequently arrested JEFFERSON and transported him to the Whatcom County Jail.  During transport, Officer Granger noticed a scratch mark on the left side of JEFFERSON's neck behind his left ear, about 1 to 2 inches long. On April 9, 2023, JEFFERSON called Hoglund 18 times from the Whatcom County Jail. The phone calls were refused or rang until voicemail was activated. None of the call recordings indicated that JEFFERSON left a message on Hoglund's voicemail.

11.      On May 8, 2023, I interviewed Heidi Solomon.  Solomon explained that she was getting ready for bed on April 8, 2023, at around 1:15 a.m. when she heard a

Affidavit of Special Agent Natalie Leavitt- 3
USAO # 2023R00502

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

vehicle peel out nearby.  Solomon looked outside and noticed an individual (later identified as Hoglund) staggering down the street.  Hoglund called her from her cell phone.  Hoglund initially apologized and said she must have pocket-dialed her.  Solomon described Hoglund's voice as hoarse and explained that Hoglund started crying, saying "he did it again" and "this time was bad."  Solomon got into her vehicle, picked up Hoglund and drove her to the LNPD station.

12.    Solomon explained that Hoglund shared the following information with her regarding the incident.  She was playing XBOX online with a friend from Sedro-Woolley, Shalynn Cordero.  JEFFERSON came home around 1:00 a.m. and was angry with Hoglund, and he unplugged the XBOX.  JEFFERSON turned and punched Hoglund in the face.  Hoglund retreated to the kitchen and JEFFERSON followed her.  JEFFERSON tackled Hoglund to the ground and strangled her until she lost consciousness.  Once Hoglund regained consciousness, JEFFERSON strangled her again.  After she regained consciousness a second time, Hoglund ran out of the house towards Solomon's residence.  Solomon picked Hoglund up and drove her to the tribal police station.

13.    Hoglund told Solomon that JEFFERSON had strangled her over five times before, but she had not previously reported that he had strangled her.  Hoglund had previously come over to Solomon's house after JEFFERSON assaulted her, as she considered it to be a "safe haven." Solomon stayed in contact with Hoglund that morning via text messages. A screen shot from Solomon's cell phone showed the following text message exchange with Hoglund at approximately 4:01 a.m. in which Hoglund referred to law enforcement activity in front of the Subject Premises captured by the Ring camera:

- Solomon: "He blowing you up"[?]
- Hoglund: "Yes, he's blowing me up. Cops are there saw em on the ring camera."

14.    On the evening of May 8, 2023, I received a text message from Solomon following the interview. Solomon shared that JEFFERSON was back with Hoglund at

Affidavit of Special Agent Natalie Leavitt- 4
USAO # 2023R00502

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

their shared residence and that Hoglund was on the phone with her. I informed the LNPD that JEFFERSON was violating a protection order, and a tribal officer responded to the house.

15.     On May 16, 2023, I interviewed Theresa Zollner, a female friend of Hoglund. Zollner asked about JEFFERSON, who she identified as her ex-boyfriend. Zollner provided the following information. Zollner spoke with Hoglund after the assault and asked if she was okay. Hoglund told Zollner that JEFFERSON had strangled her twice and that she was lucky to get out of the house alive. Zollner said that JEFFERSON used to beat and strangle her when they dated. She also expressed concerns regarding JEFFERSON's alcohol abuse and his mental health.

16.     On May 22, 2023, I interviewed Shalynn Cordero, who provided the following information. On the evening of April 7, 2023, Cordero and Hoglund had planned to play XBOX while JEFFERSON was out with friends. As Cordero and Hoglund got online to play, Cordero noticed that Hoglund's username initially showed up, but that the system showed her as offline a couple seconds later. Approximately thirty minutes later, at approximately 1:13 a.m., Hoglund called Cordero and said that JEFFERSON had hit her and that she ran barefoot out of the house. Hoglund told Cordero that she was going to a friend's house, and Cordero said she would drive from her home in Sedro-Woolley and meet Hoglund at the police station. Cordero arrived as Hoglund was wrapping up at the LNPD. Cordero drove Hoglund to a hospital in Sedro-Woolley. She thought that Hoglund would be examined and treated more quickly and that she would be safer in a separate county. Hoglund told Cordero that JEFFERSON had strangled her twice and that he had previously strangled her. Hoglund and Cordero were at the hospital until approximately 9:00 a.m.

17.     I have confirmed that JEFFERSON is an Indian: he has an Indian blood quantum of 7/8ths and is an enrolled member of the Lummi Nation, a federally recognized Indian tribe. I have also confirmed that the residence where the alleged

Affidavit of Special Agent Natalie Leavitt- 5
USAO # 2023R00502

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

assault occurred is located on tribal trust land within the exterior boundaries of the Lummi Indian Reservation.

18.     Based on my training and experience, I know that scratches, abrasions, and discoloration to the face and neck, neck and throat pain, difficulty swallowing and talking, loss of consciousness, and a hoarse voice are symptoms of strangulation and are consistent with a strangulation having occurred.

19.     Based on my training and experience along with communications with other agents, I believe the requested search will provide information on Hoglund and JEFFERSON's whereabouts, physical movements and demeanor before, during and after the assault.

20.     As part of this investigation, I have conducted surveillance at the Subject Premises and observed a sign in the driveway stating the property was, "under 24 hour video surveillance."  I also observed a rectangular device near the front door consistent with the Ring Video Doorbell system.

21.     On May 8, 2023, the FBI served Ring with a preservation request pursuant to 18 U.S.C. § 2703(f), requiring Ring to preserve all information associated with the Ring system used at the Subject Premises.

### Federal Charges and Search Warrant

22.     On June 22, 2023, the Honorable Brian A. Tsuchida, United States Magistrate Judge, issued a single-count Complaint and Arrest Warrant charging JEFFFERSON with violating 18 U.S.C. §§ 113(a)(8) and 1153(a) (Assault by Strangulation).  *See* Docket No. 1.   On June 27, 2023, JEFFERSON was arrested and made his initial appearance.  *See* Docket No. 5.  On June 29, 2023, JEFFERSON had a detention hearing and was ordered released on bond.  *See* Docket No. 9.  On June 30, 2023, the Honorable Michelle L. Peterson, United States Magistrate Judge issued a search warrant for JEFFERSON's cell phone, which was seized as evidence at the time of his federal arrest on June 27, 2023.  *See* MJ23-337.  On July 5, 2023, a Grand Jury returned a single-count Indictment charging JEFFFERSON with violating 18 U.S.C. §§

113(a)(8) and 1153(a) (Assault by Strangulation).  *See United States v. Joseph Michael Quincy Jefferson,* CR23-0109-LK (Docket No. 13).  JEFFERSON is scheduled to be arraigned on July 18, 2023.  Docket No. 19.

### Information about Ring

23.     From my review of publicly available information provided by Ring about its services, including Ring's "Privacy Policy" and "Terms of Service," I am aware of the following about Ring and about the information collected and retained by Ring:

   a.  Ring sells products and services designed to see, hear, and speak to anyone at the customer's door from the customer's computer or mobile device.

   b.  Ring obtains content captured and recorded when using Ring's products and services, such as video or audio recordings, live video or audio streams, images, comments, and data Ring's products collect from the surrounding environment to perform their functions (such as motion, events, temperature, and ambient light).

   c.  Ring generally has access to videos only if the user has a current Ring Protect plan subscription. If users choose to subscribe to a Ring Protect Subscription Plan, the customer device automatically sends to Ring for storage any video footage and/or audio recordings captured by Ring products installed by the customer.

   d.  Even if a user does not have a Ring Protect Subscription plan, Ring devices will automatically record during an answered motion or ring, but those recordings are not retained unless the user shares them through the Ring Neighbors feature. The Ring Neighbors feature allows the customer to publicly share any video footage and/or audio recording captured by Ring devices with other users through the Ring application. If shared, Ring Neighbors Recordings are retained regardless of customer participation in Ring Protect.

e. Videos are generally retained for no longer than 60 days. For legacy users, video could be retained up to 180 days. At any time during the retention period, a user may delete a video.

f. Ring asks customers to provide personal information in connection with Ring's products and services. This may include: contact information, such as name, phone number, email, and postal address; account information, such as online password and other log-in details used to access Ring's products and services.

g. Ring obtains payment information, such as name, billing address and payment card details, including card number, expiration date and security code. Payment information is collected and stored by a third-party payment processor on Ring's behalf; Ring only stores the last four digits of the customer's payment card and the expiration date.

h. Ring also obtains the geolocation of customers' mobile devices if such customers consent to the collection of this data.

i. Ring also obtains product setup information, including the name and description of the Ring product and location where it is installed, technical information about the product, including Wi-Fi network information and signal strength, and information about the device's model, serial number, and software version.

j. Ring also obtains social media handles, content, and other data posted on Ring's official social media page and other personal information contained in content Ring users submit through Ring's "Contact Us" feature or customer support tools on Ring's website or mobile application.

## Connection of Ring to the Investigation

24. As explained herein, information stored in connection with a Ring account may provide evidence of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent

Affidavit of Special Agent Natalie Leavitt- 8
USAO # 2023R00502

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  from further suspicion.  In my training and experience, captured video and audio
2  contents, images, comments, and other data collected by Ring products about the
3  surrounding environment can be evidence of who was present at a particular physical
4  location at a relevant time. This geographic and timeline information may tend to either
5  inculpate or exculpate the Ring account owner or others connected to the crime.

6      25.     Based on the information above, Ring's servers are likely to contain the
7  types of material described above, including stored video and audio content and
8  information concerning the use of Ring products and services by Lindsey Hoglund and
9  JEFFERSON.  Ring's servers are likely to contain evidence of the physical movements to
10  and from the Subject Premises by Hoglund and JEFFERSON, as well as their conditions
11  and demeanor when arriving and departing the residence during the period in question.
12  In my training and experience, such information may constitute evidence of the crime
13  under investigation.

14              **Information To Be Searched and Things To Be Seized**

15      26.     I anticipate executing this warrant under the Electronic Communications
16  Privacy Act, in particular Title 18, United States Code, Sections 2703(a), (b)(1)(A), and
17  (c)(1)(A), by using the warrant to require Ring to disclose to the government copies of
18  the records and other information (including the content of communications) particularly
19  described in Attachment B.
20  ///
21  ///
22  ///
23
24
25
26
27
28

Affidavit of Special Agent Natalie Leavitt- 9
USAO # 2023R00502

**CONCLUSION**

27.     Based on the foregoing, I request that the Court issue the proposed search warrant.

28.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  The government will execute this warrant by serving it on Ring.  Because the warrant will be served on Ring, who will then compile the requested records at a time convenient to it, and then reviewed by government-authorized persons, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.


NATALIE LEAVITT
Special Agent
Federal Bureau of Investigation


The above-named agent provided a sworn statement attesting to the truth of the contents of the foregoing affidavit by telephone on this 18th  day of July 2023.


S. KATE VAUGHAN
United States Magistrate Judge

Affidavit of Special Agent Natalie Leavitt- 10
USAO # 2023R00502

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the video system located at 2767 Lummi Shore Road, Bellingham, Washington 98226, which is stored at premises owned, maintained, controlled, or operated by Ring, LLC, a company owned by Amazon.com, Inc., and headquartered at 1523 26th St, Santa Monica, California.

Affidavit of Special Agent Natalie Leavitt- 11
USAO # 2023R00502

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1
2

# ATTACHMENT B
## Particular Things to be Seized

3
4

**Information to be disclosed by Ring, LLC**

To the extent that the information described in Attachment A is within the possession, custody, or control of Ring, LLC, including videos, communications, records, files, logs, or information that have been deleted, but are still available to Ring, LLC, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Ring, LLC is required to disclose the following to the government:

All video and audio content and all logs and records associated with the content for the account associated with the residence located at 2767 Lummi Shore Road, Bellingham, Washington 98226 from 12:00 pm. (noon) April 7, 2023 until 12:00 p.m. (noon) April 8, 2023, Pacific Time, including stored or preserved copies of such video and audio content;

All data and information that has been deleted by the user from 12:00 pm. (noon) April 7, 2023 until 12:00 p.m. (noon) April 8, 2023.

All identity and contact information, including full name, e-mail address, physical address (including city, state, and zip code), phone numbers, payment and billing information, including billing address and payment card details, and other personal identifiers;

Ring is hereby ordered to disclose the above information to the government within 10 days of issuance of this warrant.

**Information to be seized by the government**

All information described above that constitutes evidence of a violation of 18 U.S.C. §§ 113(a)(8) and 1153(a) (Assault by Strangulation), involving JOSEPH MICHAEL QUINCY JEFFERSON, and occurring between 12:00 pm. (noon) on April 7, 2023 and 12:00 p.m. (noon) on April 8, 2023, Pacific Time, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

Affidavit of Special Agent Natalie Leavitt- 12
USAO # 2023R00502

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1.  Evidence of the physical movements of individuals, including when arriving and departing the residence.

2.  Evidence indicating how and when the Ring account was accessed or used, to determine the chronological context of account access, use, and events relating to the crime under investigation and to the Ring account owner;

3.  Evidence indicating the Ring account owner's state of mind as it relates to the crime under investigation.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

Affidavit of Special Agent Natalie Leavitt- 13
USAO # 2023R00502

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct.  I am employed by Ring, LLC, and my title is _____.  I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved.  I state that the records attached hereto are true duplicates of the original records in the custody of Ring, LLC.  The attached records consist of _____ [GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)].  I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Ring, LLC, and they were made by Ring, LLC as a regular practice; and

b.      such records were generated by Ring, LLC's electronic process or system that produces an accurate result, to wit:

        1.      the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Ring, LLC in a manner to ensure that they are true duplicates of the original records; and

        2.      the process or system is regularly verified by Ring, LLC, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.


Date: _____          Signature: _____

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970